IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUECHIP TECHNOLOGIES LTD.,

        Plaintiff

v.

HCA-INFORMATION TECHNOLOGY &
SERVICES, INC.,

        Defendant.

Civil Action No. 05-10784 JLT

## ANSWER AND COUNTERCLAIM OF
## HCA-INFORMATION TECHNOLOGY & SERVICES, INC.
## AND REQUEST FOR JURY TRIAL

Defendant HCA-Information Technology Services, Inc. ("HCA-IT&S") responds to the

Complaint of BlueChip Technologies Ltd. ("BlueChip") as follows:

No response is required to BlueChip's first, unnumbered paragraph because it sets forth

no factual allegations.

### NATURE OF ACTION

1.     HCA-IT&S denies that it has engaged in willful and improper conduct.  HCA-

IT&S is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations set forth in paragraph 1 of BlueChip's Complaint and, therefore, denies

same.

2.     HCA-IT&S denies the allegations set forth in paragraph 2 of BlueChip's

Complaint.

### PARTIES

3.     HCA-IT&S admits the allegations set forth in the first sentence of paragraph 3 of

BlueChip's Complaint.  HCA-IT&S is without knowledge or information sufficient to form a

belief as to the truth of the allegations set forth in the second sentence of paragraph 3 of BlueChip's Complaint and, therefore, denies same.

4.    HCA-IT&S admits the allegations set forth in paragraph 4 of BlueChip's Complaint except that HCA-IT&S denies that its headquarters are located at 2545 Park Plaza, Nashville, Tennessee and that HCA-IT&S is a wholly-owned subsidiary of HCA Inc. Answering further, HCA-IT&S states that it is a wholly-owned indirect subsidiary of HCA Inc.

5.    HCA-IT&S admits that HCA Inc. is a for-profit, publicly-traded corporation that is headquartered at One Park Plaza. HCA-IT&S denies the remaining allegations set forth in paragraph 5 of BlueChip's Complaint.

6.    HCA-IT&S admits that it provides information technology and services to hospitals and healthcare facilities. HCA-IT&S admits further that most of the hospitals to which it provides services are owned by HCA affiliates, while some are not. HCA-IT&S denies the remaining allegations set forth in paragraph 6 of BlueChip's Complaint.

7.    HCA-IT&S admits the allegations set forth in paragraph 7 of BlueChip's Complaint.

## JURISDICTION AND VENUE

8.    Paragraph 8 of BlueChip's Complaint alleges a mere conclusion of law requiring no response from HCA-IT&S. To the extent that HCA-IT&S may be required to respond to paragraph 8, HCA-IT&S denies the allegations set forth in paragraph 8 of BlueChip's Complaint.

9.    Paragraph 9 of BlueChip's Complaint alleges a mere conclusion of law requiring no response from HCA-IT&S. To the extent that HCA-IT&S may be required to respond to

BOS1487158.1                                                    - 2 -

paragraph 9, HCA-IT&S denies the allegations set forth in paragraph 9 of BlueChip's Complaint.

10.     Paragraph 10 of BlueChip's Complaint alleges a mere conclusion of law requiring no response from HCA-IT&S. To the extent that HCA-IT&S may be required to respond to paragraph 10, HCA-IT&S denies the allegations set forth in paragraph 10 of BlueChip's Complaint.

## FACTUAL BACKGROUND

11.     HCA-IT&S admits that BlueChip purchased the MedArchive Software from EMC Corporation in January 2001, and on information and belief, that EMC had recently purchased the assets of Data General. HCA-IT&S also admits that BlueChip sells software products for the healthcare industry. HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 11 of BlueChip's Complaint and, therefore, denies same.

12.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of BlueChip's Complaint and, therefore, denies same.

13.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of BlueChip's Complaint and, therefore, denies same.

14.     HCA-IT&S admits that BlueChip offers a Windows version of the MedArchive software, which is the next generation version to the UNIX version of MedArchive. HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in the first two sentences of paragraph 14 of BlueChip's Complaint and,

therefore, denies same. HCA-IT&S denies the remaining allegation set forth in paragraph 14 of Blue Chip's Complaint.

15.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 of BlueChip's Complaint and, therefore, denies same.

16.     HCA-IT&S denies the allegations set forth in paragraph 16 of BlueChip's Complaint. HCA-IT&S admits that the MediTech Clinical Patient Care System is a set of software applications that may be used by hospitals and medical facilities to manage data such as accounting, billing, and patient medical records.

17.     HCA-IT&S admits that the MedArchive Software archives and stores data that is not current. HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 17 of BlueChip's Complaint and, therefore, denies same.

18.     HCA-IT&S admits that the MedArchive Software code operates on independent MedArchive servers. HCA-IT&S admits further that when data in the MediTech System is no longer current, that data is sent from the MediTech System to a MedArchive Server. HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 18 of BlueChip's Complaint and, therefore, denies same.

19.     HCA-IT&S denies the allegations set forth in the first sentence of paragraph 19 of BlueChip's Complaint. HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 19 of BlueChip's Complaint and, therefore, denies same.

20. HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20 of BlueChip's Complaint and, therefore, denies same.

21. HCA-IT&S admits the allegations set forth in paragraph 21 of BlueChip's Complaint.

22. HCA-IT&S admits the allegations set forth in the first sentence in paragraph 22 of BlueChip's Complaint. HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 22 of BlueChip's Complaint and, therefore, denies same.

23. HCA-IT&S admits that it was obligated to pay fees in connection with the hardware to Data General. HCA-IT&S denies the remaining allegations set forth in paragraph 23 of BlueChip's Complaint.

24. HCA-IT&S admits that it was obligated to pay fees in connection with the Data General software. HCA-IT&S denies the remaining allegations set forth in paragraph 24 of BlueChip's Complaint.

25. HCA-IT&S denies the allegations set forth in paragraph 25 of BlueChip's Complaint. HCA-IT&S admits that it operates and has operated the UNIX version of MedArchive on its UNIX servers. HCA-IT&S admits further that since May or June of 2003, the server for the Jacksonville, Florida market has operated a Windows version of the MedArchive Software.

26. HCA-IT&S denies the allegations set forth in paragraph 26 of BlueChip's Complaint. Answering further, HCA-IT&S admits that it provides information technology and

BOS1487158.1                                    - 5 -

services to hospitals and healthcare facilities. HCA-IT&S admits further that most of the hospitals to which it provides services are owned by HCA affiliates, while some are not.

27. HCA-IT&S denies the allegations set forth in paragraph 27 of BlueChip's Complaint. Answering further, HCA-IT&S admits that medical information from hospitals is stored on HCA-IT&S MedArchive Servers. Most of these hospitals are owned by HCA affiliates, while some are not.

28. HCA-IT&S denies the allegations set forth in paragraph 28 of BlueChip's Complaint. Further, HCA-IT&S moves to strike this allegation as not only false but also irrelevant.

29. HCA-IT&S denies the allegations set forth in paragraph 29 of BlueChip's Complaint.

30. HCA-IT&S denies the allegations set forth in paragraph 30 of BlueChip's Complaint.

31. HCA-IT&S denies the allegations set forth in paragraph 31 of BlueChip's Complaint. HCA-IT&S admits that, in May 1999, HCA completed the divestiture of the hospitals in two of its divisions. As a result, LifePoint Hospitals, Inc. and Triad Hospitals, Inc. were created through a distribution of common stock to HCA's shareholders.

32. HCA-IT&S denies the allegations set forth in paragraph 32 of BlueChip's Complaint. HCA-IT&S admits that it has divested itself of other hospitals and healthcare facilities since 1999.

33. HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33 of BlueChip's Complaint and, therefore, denies same.

34.     HCA-IT&S admits the allegations set forth in paragraph 34 of BlueChip's
Complaint.

35.     HCA-IT&S admits the allegations set forth in paragraph 35 of BlueChip's
Complaint.

36.     HCA-IT&S admits the allegations set forth in paragraph 36 of BlueChip's
Complaint.

37.     HCA-IT&S admits the allegations set forth in paragraph 37 of BlueChip's
Complaint.

38.     HCA-IT&S denies the allegations set forth in paragraph 38 of BlueChip's
Complaint.

39.     HCA-IT&S denies the allegations set forth in paragraph 39 of BlueChip's
Complaint. Answering further, HCA-IT&S admits that it received communications from Data
General and BlueChip concerning BlueChip's purchase of the MedArchive software.

40.     HCA-IT&S denies the allegations set forth in paragraph 40 of BlueChip's
Complaint. Answering further, HCA-IT&S admits that, in February 2001, it provided a list of
the servers that were running the MedArchive software to BlueChip and Data General.

41.     HCA-IT&S denies the allegations set forth in paragraph 41 of BlueChip's
Complaint.

42.     HCA-IT&S denies the allegations set forth in paragraph 42 of BlueChip's
Complaint.

43.     HCA-IT&S denies the allegations set forth in paragraph 43 of BlueChip's
Complaint. Answering further, HCA-IT&S admits that it entered into a Software License

Agreement and Master Software Support Agreement with BlueChip pursuant to which HCA-
IT&S has paid fees to BlueChip.

44.    HCA-IT&S is without knowledge or information sufficient to form a belief as to
the truth of the allegations set forth in paragraph 44 of BlueChip's Complaint and, therefore,
denies same.

45.    HCA-IT&S denies the allegations set forth in paragraph 45 of BlueChip's
Complaint. Answering further, HCA-IT&S admits that it entered into a Software License
Agreement and Master Software Support Agreement with BlueChip pursuant to which HCA-
IT&S has paid fees to BlueChip.

46.    HCA-IT&S admits that copies of the License Agreement and Support Agreement
are attached to the Complaint. Answering further, HCA-IT&S states that the agreements speak
for themselves and, therefore, HCA-IT&S denies the remaining allegations set forth in paragraph
46 of BlueChip's Complaint.

47.    HCA-IT&S states that the License Agreement speaks for itself and, therefore,
HCA-IT&S denies the allegations set forth in paragraph 47 of BlueChip's Complaint.

48.    HCA-IT&S states that the License Agreement and Support speak for themselves
and, therefore, HCA-IT&S denies the allegations set forth in paragraph 48 of BlueChip's
Complaint.

49.    HCA-IT&S denies the allegations set forth in paragraph 49 of BlueChip's
Complaint.

50.    HCA-IT&S admits the allegations set forth in paragraph 50 of BlueChip's
Complaint.

- 8 -

51.     HCA-IT&S states that the License Agreement speaks for itself and, therefore, denies the allegations set forth in paragraph 51 of BlueChip's Complaint.

52.     HCA-IT&S states that the License Agreement speaks for itself and, therefore, denies the allegations set forth in paragraph 52 of BlueChip's Complaint.

53.     HCA-IT&S states that the License Agreement speaks for itself and, therefore, denies the allegations set forth in paragraph 53 of BlueChip's Complaint.

54.     HCA-IT&S states that the License Agreement speaks for itself and, therefore, denies the allegations set forth in paragraph 54 of BlueChip's Complaint.

55.     HCA-IT&S states that the License Agreement speaks for itself and, therefore, denies the allegations set forth in paragraph 55 of BlueChip's Complaint.

56.     HCA-IT&S denies the allegations set forth in paragraph 56 of BlueChip's Complaint.

57.     HCA-IT&S denies the allegations set forth in paragraph 57 of BlueChip's Complaint.

58.     HCA-IT&S denies the allegations set forth in paragraph 58 of BlueChip's Complaint.

59.     HCA-IT&S denies the allegations set forth in paragraph 59 of BlueChip's Complaint.

60.     HCA-IT&S denies the allegations set forth in paragraph 60 of BlueChip's Complaint.

61.     HCA-IT&S denies the allegations set forth in paragraph 61 of BlueChip's Complaint.

62.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 62 of BlueChip's Complaint and, therefore, denies same.

63.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 63 of BlueChip's Complaint and, therefore, denies same.

64.     HCA-IT& denies the allegations set forth in paragraph 64 of BlueChip's Complaint.

65.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 65 of BlueChip's Complaint and, therefore, denies same.

66.     HCA-IT&S denies the allegations set forth in paragraph 66 of BlueChip's Complaint.

67.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 67 of BlueChip's Complaint and, therefore, denies same. Answering further, HCA-IT&S admits that it received a letter from BlueChip dated March 17, 2004, which letter speaks for itself.

68.     HCA-IT&S denies the allegations set forth in paragraph 68 of BlueChip's Complaint.

69.     HCA-IT&S denies the allegations set forth in paragraph 69 of BlueChip's Complaint. HCA-IT&S admits that it had discussions regarding BlueChip's continued support for the MedArchive software and BlueChip's Windows based MedArchive software.

70.     HCA-IT&S admits the allegations set forth in paragraph 70 of BlueChip's Complaint.

71.     HCA-IT&S denies the allegations set forth in paragraph 71 of BlueChip's Complaint.

72.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 72 of BlueChip's Complaint and, therefore, denies same.

73.     HCA-IT&S denies the allegations set forth in paragraph 73 of BlueChip's Complaint.

74.     HCA-IT&S admits the allegations set forth in paragraph 74 of BlueChip's Complaint.

75.     HCA-IT&S denies the allegations set forth in paragraph 75 of BlueChip's Complaint.

76.     HCA-IT&S denies the allegations set forth in paragraph 76 of BlueChip's Complaint.

77.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 77 of BlueChip's Complaint and, therefore, denies same.

78.     HCA-IT&S admits the allegations set forth in paragraph 78 of BlueChip's Complaint.

79.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 79 of BlueChip's Complaint and, therefore, denies same.

80.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 80 of BlueChip's Complaint and, therefore, denies same.

81.     HCA-IT&S denies the allegations set forth in paragraph 81 of BlueChip's Complaint.

82.     HCA-IT&S denies the allegations set forth in paragraph 82 of BlueChip's Complaint.

83.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 83 of BlueChip's Complaint and, therefore, denies same.

84.     HCA-IT&S is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 84 of BlueChip's Complaint and, therefore, denies same.

85.     HCA-IT&S denies the allegations set forth in paragraph 85 of BlueChip's Complaint. HCA-IT&S admits that in May and June of 2003, the archive solution for HCA-IT&S' Jacksonville, Florida market was converted to a Windows version of the MedArchive software.

86.     HCA-IT&S denies the allegations set forth in paragraph 86 of BlueChip's Complaint.

87.     HCA-IT&S denies the allegations set forth in paragraph 87 of BlueChip's Complaint.

88.     HCA-IT&S denies the allegations set forth in paragraph 88 of BlueChip's Complaint.

89.     HCA-IT&S denies the allegations set forth in paragraph 89 of BlueChip's Complaint.

90.     HCA-IT&S denies that it "was using the MedArchive Software on servers not authorized to store and operate the MedArchive Software." HCA-IT&S admits that it did not "provide notice to BlueChip pursuant to Paragraph 3 of the License Agreement" but denies that it was obligated to do so. Answering further, HCA-IT&S denies the allegations set forth in paragraph 90 of BlueChip's Complaint.

91.     HCA-IT&S denies that it "installed MedArchive Software on servers not authorized to store and operate the MedArchive Software," and, therefore, HCA-IT&S denies any obligation to "provide prior payment to BlueChip." Answering further, HCA-IT&S denies the allegations set forth in paragraph 91 of BlueChip's Complaint.

92.     HCA-IT&S denies the allegations set forth in paragraph 92 of BlueChip's Complaint.

93.     HCA-IT&S denies the allegations set forth in paragraph 93 of BlueChip's Complaint.

94.     HCA-IT&S admits that BlueChip demanded an audit. HCA-IT&S denies the remaining allegations set forth in paragraph 94 of BlueChip's Complaint.

95.     HCA-IT&S denies the allegations set forth in paragraph 95 of BlueChip's Complaint. Answering further, HCA-IT&S declined to provide BlueChip with a list of healthcare facilities and declined to allow BlueChip to make copies of HCA-IT&S' electronic records.

96.    HCA-IT&S is without knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in paragraph 96 of BlueChip's Complaint and, therefore,

denies same.

### COUNT I
### COPYRIGHT INFRINGEMENT
(17 U.S.C. § 501)

97.    HCA-IT&S repeats and incorporates by reference paragraphs 1 through 96 of its

Answer as though fully set forth herein.

98.    HCA-IT&S denies the allegations set forth in paragraph 98 of BlueChip's

Complaint.

99.    HCA-IT&S denies the allegations set forth in paragraph 99 of BlueChip's

Complaint.

100.    HCA-IT&S denies the allegations set forth in paragraph 100 of BlueChip's

Complaint.

101.    HCA-IT&S denies the allegations set forth in paragraph 101 of BlueChip's

Complaint.

### COUNT II
### CONTRIBUTORY COPYRIGHT INFRINGEMENT
(17 U.S.C. § 501)

102.    HCA-IT&S repeats and incorporates by reference paragraphs 1 through 101 of its

Answer as though fully set forth herein.

103.    HCA-IT&S denies the allegations set forth in paragraph 103 of BlueChip's

Complaint.

104.    HCA-IT&S denies the allegations set forth in paragraph 104 of BlueChip's

Complaint.

105.    HCA-IT&S denies the allegations set forth in paragraph 105 of BlueChip's Complaint.

106.    HCA-IT&S denies the allegations set forth in paragraph 106 of BlueChip's Complaint.

107.    HCA-IT&S denies the allegations set forth in paragraph 107 of BlueChip's Complaint.

108.    HCA-IT&S denies the allegations set forth in paragraph 108 of BlueChip's Complaint.

**COUNT III**
**BREACH OF CONTRACT**

109.    HCA-IT&S repeats and incorporates by reference paragraphs 1 through 108 of its Answer as though fully set forth herein.

110.    HCA-IT&S denies the allegations set forth in paragraph 110 of BlueChip's Complaint.

111.    HCA-IT&S denies the allegations set forth in paragraph 111 of BlueChip's Complaint.

112.    HCA-IT&S denies the allegations set forth in paragraph 112 of BlueChip's Complaint.

113.    HCA-IT&S denies the allegations set forth in paragraph 113 of BlueChip's Complaint.

114.    HCA-IT&S denies the allegations set forth in paragraph 114 of BlueChip's Complaint.

## COUNT IV
## UNFAIR AND DECEPTIVE TRADE PRACTICES
## UNDER MASS. GEN. L. CH. 93A

115.    HCA-IT&S repeats and incorporates by reference paragraphs 1 through 114 of its

Answer as though fully set forth herein.

116.    HCA-IT&S admits the allegations set forth in paragraph 116 of BlueChip's

Complaint.

117.    HCA-IT&S denies the allegations set forth in paragraph 117 of BlueChip's

Complaint.

118.    HCA-IT&S denies the allegations set forth in paragraph 118 of BlueChip's

Complaint.

119.    HCA-IT&S denies the allegations set forth in paragraph 119 of BlueChip's

Complaint.

120.    HCA-IT&S denies the allegations set forth in paragraph 120 of BlueChip's

Complaint.

HCA-IT&S denies that BlueChip is entitled to any of the Relief Requested.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by accord and satisfaction.

### THIRD AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by estoppel.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by laches.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by waiver.

### SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by novation.

### SEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by justification.

### EIGHTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by unclean hands.

### NINTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by BlueChip's material breach of its

contractual obligations and/or failure to perform, thereby excusing HCA-IT&S's performance.

### TENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by the contractual limitations period.

### ELEVENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, by BlueChip's breach of the implied

covenant of good faith and fair dealing.

### TWELFTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, because HCA-IT&S' alleged conduct did

not occur primarily and substantially within the Commonwealth.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, because BlueChip has suffered no damages

or has failed to mitigate the damages, if any, that it has suffered.

### DEMAND FOR JURY TRIAL

HCA-IT&S demands a trial by jury on all counts of BlueChip's Complaint.

WHEREFORE, HCA-IT&S respectfully requests that this Court:

1.     Enter judgment in favor of HCA-IT&S on all counts of the Complaint;

2.     Award HCA-IT&S its damages, interest, costs, and attorney's fees; and

3.     Award HCA-IT&S such other relief as this Court deems just.

## COUNTERCLAIM OF HCA-INFORMATION TECHNOLOGY & SERVICES, INC.

Defendant and Plaintiff-in-Counterclaim HCA-Information Technology Services, Inc.

("HCA-IT&S") asserts the following Counterclaim against Plaintiff and Defendant-in-

Counterclaim BlueChip Technologies Ltd. ("BlueChip"):

### PARTIES

1.      HCA-IT&S is a Tennessee corporation with a principal place of business located
at 2555 Park Plaza, Nashville, Tennessee.

2.      BlueChip is a Massachusetts corporation with a principal place of business
located at 24 Cherry Hill Drive, Danvers, Massachusetts.

### JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the
matter in controversy exceeds $75,000 and is between citizens of different states.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial
part of the events giving rise to this Counterclaim occurred in this district.

### FACTS COMMON TO ALL COUNTS

#### HCA-IT&S

5.      HCA-IT&S is a wholly-owned indirect subsidiary of HCA Inc. ("HCA").

6.      HCA is a holding company whose affiliates or subsidiaries own, manage, or
operate hospitals and other healthcare facilities, such as freestanding surgery centers and
diagnostic and imaging centers.

7.      HCA-IT&S, as its name implies, provides information technology and services to
those hospitals and healthcare facilities (collectively, the "Hospitals").

**The MEDITECH System**

8.     Among other things, HCA-IT&S provides a service to the Hospitals that enables physicians and other healthcare providers to electronically retrieve patient medical information, including physician-dictated reports, nursing documentation, and other details related to medical care.

9.     The software program that controls most of this electronic medical recordkeeping function is known as the MEDITECH Clinical Patient Care System (the "MEDITECH System").

10.     Once patient medical information reaches a certain "age" in the MEDITECH System, it is electronically archived. While the "age" at which medical information is archived can vary, it is commonly archived on a rolling basis as early as forty-five (45) days from the patient's discharge date (for inpatient services) or service date (for outpatient services).

**The MedArchive Software Program**

11.     The MedArchive software program ("MedArchive") permits electronic retrieval and long term storage of archived patient medical information at the request of the MEDITECH System.

12.     MedArchive operates on servers owned and operated by HCA-IT&S.

13.     These servers are housed in HCA-IT&S' eight data centers.

14.     When a physician or healthcare provider using the MEDITECH System at one of the Hospitals needs to review a patient's electronic medical information, the MEDITECH System determines the location of the required information (either on the live MEDITECH System or on the back-end MedArchive server).

15.     If any of the information is archived on a MedArchive server, then the

MEDITECH System makes a computer-to-computer request to MedArchive to return the records back to the MEDITECH System.

16.     Once the records are returned to the MEDITECH System, they are presented back to the healthcare provider in the MEDITECH System environment.

17.     Likewise, if the MEDITECH System determines that one or more records are eligible for archiving based upon their aging criteria, an automated request to store patient medical information is sent by the MEDITECH System to the appropriate MedArchive server.

18.     Access to MedArchive and the medical information stored on the MedArchive servers is accomplished by the computer-to-computer interaction between the MedArchive servers and the servers operating the MEDITECH System.

19.     This machine-to-machine interaction between the MEDITECH System and MedArchive is the only means of standard access to archived patient medical information stored on the MedArchive servers.

20.     There is no user interface that enables healthcare providers at the Hospitals to access MedArchive directly.

21.     Healthcare providers at the Hospitals have no access whatsoever to MedArchive software code (whether object code or source code) and such code is not made available to any healthcare providers at the Hospitals.

22.     Healthcare providers at the Hospitals also have no direct access to MedArchive, its functionality, or the data stored on the MedArchive servers.

23.     Rather, the interaction between the MEDITECH System and MedArchive is done exclusively through machine-to-machine communication, with no user knowledge at the Hospitals as to the location or techniques employed by MedArchive.

24.     Thus, the healthcare provider at a Hospital who reviews electronic patient medical information does not actually "use" MedArchive or interface directly with it.

25.     Indeed, the healthcare provider is not even aware of the interaction between the MEDITECH System and MedArchive.

## The Data General Agreement And The Divested Facilities

26.     In the mid-1990's, Columbia/HCA Information Services (n/k/a HCA-IT&S) ("Columbia/HCA")  had an agreement with Data General Corporation ("Data General"), which owned MedArchive at that time, pursuant to which Columbia/HCA could operate MedArchive on servers within its eight data centers and Data General would provide support for MedArchive (the "Data General Agreement").

27.     Beginning in the late 1990's, HCA began to pursue a strategy of divesting itself of certain Hospitals.

28.     In May 1999, HCA completed the divestiture of Hospitals in two of its divisions. As a result, LifePoint Hospitals, Inc. ("LifePoint") and Triad Hospitals, Inc. ("Triad"), two independent companies, were created.

29.     Following their divestiture, HCA has, through certain subsidiaries, continued to provide services, including the storage and retrieval of electronic patient information, to LifePoint and Triad.

30.     HCA has also divested itself of other Hospitals.

31.    In some instances, HCA has, through certain subsidiaries, continued to provide services to these divested Hospitals, including information technology and services through HCA-IT&S (the divested Hospitals to which HCA-IT&S has continued to provide services are the "Divested Facilities").

32.    In 1999, Data General was aware that HCA was planning to divest itself of certain Hospitals and that, in certain instances, HCA-IT&S would continue to provide information technology and services, including the storage and retrieval of electronic patient information, to these divested Hospitals on an ongoing basis.

33.    Data General and HCA-IT&S agreed that, after the divestitures, HCA-IT&S would continue to pay the same licensing and support fees to Data General for all of Data General's products and services for which HCA-IT&S had paid prior to the divestitures.

34.    Thus, where HCA-IT&S continued to provide information technology and services to a divested Hospital, HCA-IT&S would continue to pay the same fees to Data General that it paid before the divestiture and Data General would not seek to charge the divested hospital directly for its programs or support.

## HCA-IT&S' Agreements With BlueChip

35.    In December 2000 or January 2001, BlueChip purchased MedArchive from EMC Corporation ("EMC"), which had recently purchased the assets of Data General.

36.    From its earliest interactions with HCA-IT&S, BlueChip was aware that HCA-IT&S was running MedArchive on seventy-six (76) servers, each of which was dedicated to a certain geographic market.

37.    BlueChip also knew that HCA-IT&S did not know how many Hospitals were being served by each server.

BOS1487158.1                                  - 23 -

38. Thus, BlueChip was aware that the Data General Agreement was a "server-based" agreement, that is, the use and pricing was based on the number of servers running the software, not the number of Hospitals archiving data, or some other metric.

39. HCA-IT&S subsequently entered into two agreements with BlueChip concerning the use and support of certain software programs: the Software License Agreement (the "License Agreement") and the Master Software Support Agreement (the "Support Agreement").

40. HCA-IT&S executed both of these Agreements on December 6, 2001.

41. BlueChip executed both of these Agreements on or about January 3, 2002.

42. The License Agreement governs the use of various BlueChip software programs, which are listed on Exhibit B to the License Agreement (the various software products covered by the License Agreement are, together, the "Licensed Software").

43. MedArchive is included among the Licensed Software listed in Exhibit B.

44. The specific servers on which HCA-IT&S is authorized to run MedArchive are listed in Exhibit A to the License Agreement.

45. Exhibit A is entitled "List of Designated Equipment" and "HCA MedArchive Systems by Regional Data Centers and CPCS Networks." Exhibit A lists seventy-six (76) MedArchive servers and the MEDITECH System Networks that correspond to each of the MedArchive servers. The MEDITECH System Networks are identified by, among other things, the "market network" and "time zone," while the MedArchive servers are identified by, among other things, "serial number."

46. Based on the terms of the License Agreement, including the definition of "Network" in the License Agreement and the corresponding information set forth on Exhibit A to the License Agreement, HCA-IT&S understood and believed at all times that as long as the

BOS1487158.1                              - 24 -

archived medical information that was stored on the MedArchive servers was available only to
the MEDITECH System Networks, HCA-IT&S was in compliance with the License Agreement,
regardless of whether the MEDITECH System Network serviced Divested Facilities.

47.    Indeed, in January 2002, when BlueChip executed the License Agreement, some
of the MEDITECH System Networks listed on Exhibit A were exclusively servicing Divested
Facilities.

48.    HCA-IT&S has never operated MedArchive on more than the seventy-six (76)
servers listed in Exhibit A.

49.    Currently, HCA-IT&S operates MedArchive on seventy-three (73) of those
servers, and a seventy-fourth server operates BlueChip's next generation archive software
solution, which is a collection of windows-based programs including the programs that are
marketed as Object Archive and Medscan 2000 (Object Archive and Medscan 2000 are, together,
"Object Archive").

50.    The Support Agreement concerns BlueChip's obligations to provide support to
HCA-IT&S in connection with the Licensed Software.

51.    Exhibit C to the License Agreement is entitled "Supported Programs" and
identifies programs for which BlueChip agreed to provide support (the "Supported Programs")
and the cost of support for the programs.

52.    Exhibit C also identifies the quantity (as stated in the agreement: "QTY") of the
Supported Programs and the "Unit Charge" for the Supported Programs.

53.    With respect to MedArchive, Exhibit C lists the quantity of Supported Programs
as "76" and the Unit Charge as $330.00 per month.

54.    Based on the number of servers running MedArchive, and the per Unit Charge for each server, the monthly charge for support for MedArchive on all seventy-six (76) servers in January 2002 was $25,080.00.

**Object Archive**

55.    In May and June 2003, the archive solution for HCA-IT&S' Jacksonville, Florida market was migrated to a new server and the software was converted to Object Archive (the "Jacksonville Server").

**BlueChip's Support**

56.    Since January 2002, BlueChip has provided support to HCA-IT&S pursuant to the Support Agreement.

57.    This support has included the development of code fixes for program malfunctions, data restoration and file recovery, and programming changes to correct software malfunctions.

58.    Since January 2002, HCA-IT&S has formally requested support from BlueChip on approximately ninety-three (93) occasions.

59.    Of those ninety-three (93) support calls, seventy-nine (79) related to support for Object Archive and related system functions.

60.    Since January 1, 2004, HCA-IT&S has made one (1) request for support in connection with MedArchive: on September 13, 2004.

**Extension Of The Support Agreement**

61.    During February, March, and April 2004, BlueChip and HCA-IT&S engaged in discussions concerning the future of their business relationship.

62.     BlueChip wanted HCA-IT&S to replace MedArchive with the next generation software product (Object Archive), which would have required HCA-IT&S to purchase new servers on which to operate the software.

63.     Meanwhile, HCA-IT&S informed BlueChip that it was considering replacing BlueChip's software with technology offered by a competitor.

64.     In March 2004, BlueChip informed HCA-IT&S that it wanted to end its support for MedArchive but offered to continue to provide support if HCA-IT&S would commit to a multi-year extension of the Support Agreement through December 31, 2006.

65.     At that time, BlueChip also provided HCA-IT&S with a new Exhibit C to the License Agreement, entitled "Exhibit C Software Support Price Schedule" ("New Exhibit C").

66.     Based on subsequent discussions and written communications between HCA-IT&S and BlueChip in March and April 2004, HCA-IT&S and BlueChip agreed that BlueChip would continue to provide support for MedArchive pursuant to the Support Agreement through December 31, 2006.

67.     Accordingly, on or about May 28, 2004, HCA-IT&S executed New Exhibit C.

68.     New Exhibit C provides, in pertinent part, that the parties agree "to an extended contract term beginning April 1, 2004 and ending December 31, 2006."

69.     New Exhibit C further states that "The pricing listed above is effective July 1, 2004 through June 30, 2005 and is subject to a limited annual price increase on the anniversary date, in accordance with the Master Software Support Agreement (#BCT 601 dated 12/06/01)."

70.     Pursuant to New Exhibit C, BlueChip increased the price of support for MedArchive to $28,828.43 per month and the total monthly price for all Supported Programs to $32,564.23.

BOS1487158.1                                - 27 -

71.    Through 2004, BlueChip increased its prices for support by approximately 5%
each year.  In July 2002, BlueChip increased the total monthly cost of support for the Supported
Programs to $29,747 (from $28,330.00).  In July 2003, BlueChip increased the total monthly cost
of support for the Supported Programs to $30,936.36.

72.    Every month from January 2002 to May 2005, BlueChip has sent an invoice to
HCA-IT&S for the next month's support and HCA-IT&S has paid the invoice in a timely fashion.

73.    Pursuant to New Exhibit C, each month from June 2004 to April 2005, BlueChip
has sent an invoice to HCA-IT&S seeking payment of $32,564.23 for the next month's support
and, each month, HCA-IT&S has paid the invoices.

## BlueChip's Claim Of "Unauthorized Users"

74.    In December 2004, apparently frustrated by its inability to convince HCA-IT&S
to convert from MedArchive to the costly Object Archive, BlueChip embarked on an aggressive
new sales tactic.

75.    In a letter dated December 17, 2004, BlueChip claimed for the first time that
HCA-IT&S was violating the License Agreement by permitting the Divested Facilities to access
archived data stored on the MedArchive servers.

76.    BlueChip also intimated that it might refuse to continue to provide support if these
issues could not be "resolved" by "no later than January 31, 2005."

77.    BlueChip's allegations came as a shock to HCA-IT&S.  As HCA-IT&S explained
in letters back to BlueChip, from the very beginning of its relationship with BlueChip, HCA-
IT&S  believed that it had an agreement with BlueChip whereby HCA-IT&S could provide
information technology and services to the Hospitals – including the Divested Facilities – under

BOS1487158.1                                            - 28 -

the terms of the License Agreement and the Support Agreement without incurring additional costs.

78.     In other words, HCA-IT&S believed that it had a server-based License Agreement and Support Agreement; that is, BlueChip was charging HCA-IT&S for support for MedArchive based on the number of servers that were running MedArchive, not the number of Hospitals to which HCA-IT&S was providing information and technology services.

79.     In short, HCA-IT&S believed that it had an agreement with BlueChip that HCA-IT&S would be able to continue to provide services to the Divested Facilities at no additional cost over and above the payments made pursuant to the License Agreement and the Support Agreement.

80.     Notwithstanding BlueChip's claims in December 2004 that HCA-IT&S was violating the terms of the License Agreement, and notwithstanding its implied threat to terminate support, BlueChip continued to send monthly invoices for $32,564.00 to HCA-IT&S for support for the Supported Programs, HCA-IT&S continued to pay the invoices, and BlueChip continued to provide support.

81.     On April 19, 2005, BlueChip filed suit against HCA-IT&S alleging, among other things, that HCA-IT&S breached the License Agreement by permitting the Divested Facilities to access archived patient medical information stored on the MedArchive servers.

## BlueChip's Attempts To Charge For "Unauthorized Users" And Threats To Terminate Support

82.     Beginning in May 2005, BlueChip tried yet another aggressive tactic to put pressure on HCA-IT&S: BlueChip began threatening to disrupt support.

83. On May 1, 2005, BlueChip sent a letter to HCA-IT&S claiming for the first time that the Support Agreement had expired on June 30, 2004 and that HCA-IT&S was "in an 'at-will' relationship" with BlueChip for support.

84. BlueChip also claimed that it had not agreed (in May 2004) to extend the Support Agreement through December 31, 2006 pursuant to New Exhibit C because of the alleged disagreement over "unauthorized users" that BlueChip first raised in December 2004.

85. In its May 1, 2005 letter, BlueChip also claimed for the first time that it was entitled to charge HCA-IT&S for support for the Divested Facilities – which BlueChip considered "unauthorized users."

86. As with other letters from BlueChip where BlueChip was claiming wrongdoing by HCA-IT&S, and impliedly threatening HCA-IT&S, BlueChip attempted to "up-sell" HCA-IT&S onto BlueChip's next generation product, Object Archive.

87. BlueChip attached to its letter yet another version of "Exhibit C" – this one for a "One Year Support Agreement Effective: June 1, 2005 to May 31, 2006."

88. This latest Exhibit C distinguished between what BlueChip termed "HCA Affiliates" and "HCA-Non-Affiliates."

89. In addition to trying to raise its prices effective June 1, 2005, BlueChip also sought an additional monthly payment of $83,201.00 from HCA-IT&S for "MedArchive Support" for "HCA-Non-Affiliates."

90. On May 19, 2005, HCA-IT&S responded to BlueChip's May 1, 2005 letter and explained, among others things, that HCA-IT&S believed the Support Agreement remained in force and that BlueChip had no right to impose additional charges for support for the Divested Facilities under the terms of the License Agreement and Support Agreement.

91. HCA-IT&S also explained that, under the terms of the Support Agreement, BlueChip could not increase its prices without providing sixty days written notice.

92. On May 20, 2005, BlueChip responded to HCA-IT&S' May 19, 2005 letter and now, rather than claiming that the Support Agreement had expired (as it had done in its May 1, 2005 letter), BlueChip claimed that HCA-IT&S was "in material breach" of the Support Agreement by, among other things, "threatening to materially breach its support and maintenance agreement contract with BlueChip by failing to timely pay for support and maintenance services."

93. BlueChip then repeatedly invoked the terms of the Support Agreement to justify its price increases for support, which BlueChip now said would be effective on July 1, 2005 (in observance of the 60 day notice requirement).

94. On or about May 10, 2005, BlueChip issued a new invoice to HCA-IT&S seeking payment of $32,564.00 for support for the period of June 1, 2005 to June 30, 2005.

95. Shortly thereafter, HCA-IT&S paid this invoice with a check in the amount of $32,564.00.

96. On May 31, 2005, HCA-IT&S responded to BlueChip's May 20, 2005 letter and explained, among other things, that HCA-IT&S would seek immediate legal relief if BlueChip attempted "to terminate support prematurely or otherwise interfere with HCA-IT&S' use of the Licensed Software" because such actions "could jeopardize the health and safety of patients receiving medical care at the facilities served by HCA-IT&S."

97. On June 1, 2005, BlueChip issued an invoice to HCA-IT&S seeking a total payment of $121,325.00 for support for the Supported Programs for the time period of July 1, 2005 to July 31, 2005.

- 31 -

98.     BlueChip sought a monthly payment of $83,201.00 for "MedArchive Support" for what it called "HCA-Non-Affiliates."

99.     BlueChip also listed separate charges for each of the Supported Programs, including a charge for "MedArchive Support" for what BlueChip called "HCA-Affiliates."

100.    BlueChip also imposed substantial price increases on each of the Supported Programs, including a price increase of more than 15% over last year's price on the core product of MedArchive Support.

101.    On June 17, 2005, HCA-IT&S issued a check to BlueChip in the amount of $38,124.00 as full payment on BlueChip's invoice dated June 1, 2005.

102.    In the letter that accompanied HCA-IT&S' payment, HCA-IT&S explained that the payment covered each of the Supported Programs and BlueChip's price increases.

103.    HCA-IT&S further explained that it objected to BlueChip's attempts to charge for what BlueChip called "HCA-Non-Affiliates" and, therefore, HCA-IT&S declined to pay such charges.

104.    HCA-IT&S indicated once again that it would seek immediate legal relief if BlueChip attempted to terminate support.

105.    On June 22, 2005, BlueChip sent a letter to HCA-IT&S (dated June 23, 2005) demanding payment of an additional $83,201.00 by July 5, 2005 (the "Termination Notice").

106.    The Termination Notice further stated that if HCA-IT&S does not pay the disputed amount of $83,201.00 by July 5, 2005, then "BlueChip intends to exercise its rights and suspend performance under the Master Software Support Agreement."

107. Based on the Termination Notice, HCA-IT&S understands and believes that BlueChip will suspend or terminate support for all Supported Programs, including MedArchive and Object Archive, on July 5, 2005.

## COUNT I
## (Declaratory Judgment)

108. HCA-IT&S repeats and realleges the allegations contained in the above paragraphs.

109. HCA-IT&S seeks a determination of the parties' respective rights and obligations under the License Agreement and the Support Agreement pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 and the Massachusetts Declaratory Judgment Act, M.G.L., c. 231A, §§ 1-2.

110. A dispute has arisen between HCA-IT&S and BlueChip as to their respective rights and obligations under the License Agreement and the Support Agreement.

111. HCA-IT&S contends that BlueChip has breached the License Agreement and the Support Agreement by, among other things, imposing additional charges for support that is already included in the Support Agreement, threatening to terminate support based on nonpayment of the additional charges, and wrongfully interfering with HCA-IT&S' use of MedArchive and other BlueChip software.

112. BlueChip contends that HCA-IT&S has breached the License Agreement and the Support Agreement by, among other things, allegedly threatening to materially breach the Support Agreement by failing to timely pay for support and maintenance services.

113. An actual controversy exists between the parties as to their legal rights and obligations under the License Agreement and the Support Agreement. The rights of the parties

under the License Agreement and the Support Agreement can best be determined by declaratory judgment.

## COUNT II
## (Breach of Contract)

114.     HCA-IT&S repeats and realleges the allegations contained in the above paragraphs.

115.     HCA-IT&S is entitled to use MedArchive and other BlueChip software, pursuant to the terms of the License Agreement.

116.     The Support Agreement requires BlueChip to provide support to HCA-IT&S for the Supported Programs pursuant to the terms of that Agreement and the License Agreement.

117.     BlueChip has wrongfully imposed additional charges for support that is already included in the Support Agreement and has wrongfully interfered with HCA-IT&S' lawful use of MedArchive and other BlueChip software.

118.     BlueChip has also wrongfully threatened to terminate support based on HCA-IT&S' nonpayment of the improperly imposed additional charges.

119.     BlueChip's conduct constitutes a material breach of the License Agreement and the Support Agreement.

120.     As a direct result of BlueChip's breach of the License Agreement and the Support Agreement, HCA-IT&S has incurred damages in an amount to be determined at trial.

## COUNT III
## (Fraudulent Misrepresentation)

121.     HCA-IT&S repeats and realleges the allegations contained in the above paragraphs.

122.    BlueChip made false representations of material facts to HCA-IT&S concerning

the scope of the License Agreement and Support Agreement prior to the time that HCA-IT&S

executed the License Agreement in December 2001.

123.    During the time period of February through April 2004, BlueChip also made false

representations of material facts concerning the scope of the License Agreement and Support

Agreement and the duration of the Support Agreement.

124.    At the time of making these representations, BlueChip knew that they were false.

125.    BlueChip made such misrepresentations for the purpose of inducing HCA-IT&S

to enter into to the License Agreement, the Support Agreement, and New Exhibit C.

126.    HCA&IT&S relied upon BlueChip's misrepresentations in acting upon the

information and was damaged as a result, in an amount to be determined at trial.

## COUNT IV
### (Negligent Misrepresentation)

127.    HCA-IT&S repeats and realleges the allegations contained in the above

paragraphs.

128.    In 2001 and 2004, BlueChip, in the course of its business supplied false

information to HCA-IT&S for use in a business transaction, including false information

concerning the scope of the License Agreement and Support Agreement and, in 2004, the

duration of the Support Agreement.

129.    BlueChip failed to exercise reasonable care in providing the false information to

HCA-IT&S.

130.    HCA-IT&S was justified in relying upon BlueChip's representation, and, in doing

so, suffered damages in an amount to be determined at trial.

## COUNT V
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

131.    HCA-IT&S repeats and realleges the allegations contained in the above

paragraphs.

132.    The License Agreement and the Support Agreement each contain an implied

covenant of good faith and fair dealing.

133.    BlueChip's conduct as set forth above constitutes a material breach of the implied

covenant of good faith and fair dealing of both the License Agreement and the Support

Agreement.

134.    As a direct result of BlueChip's breach of the implied covenant of good faith and

fair dealing, HCA-IT&S has incurred damages in an amount to be determined at trial.

## COUNT VI
### (Violation of M.G.L. c. 93A, §§ 2 and 11)

135.    HCA-IT&S repeats and realleges the allegations contained in the above

paragraphs.

136.    BlueChip is, and has at all relevant times been, engaged in trade or commerce

within the meaning of M.G.L. c. 93A, § 1.

137.    BlueChip's conduct as set forth above occurred primarily and substantially in the

Commonwealth.

138.    BlueChip's conduct as set forth above constitutes knowing and intentional unfair

and deceptive acts or practices within the meaning of M.G.L. c. 93A, §§ 2 and 11.

139.    As a direct result of BlueChip's conduct, HCA-IT&S has incurred damages in an

amount to be determined at trial.

## DEMAND FOR JURY TRIAL

BOS1487158.1                            - 36 -

HCA-IT&S demands a trial by jury on all counts of this Counterclaim and all defenses asserted thereto.

WHEREFORE, HCA-IT&S respectfully requests that the Court:

1. Enter judgment in favor of HCA-IT&S on all counts of the Counterclaim;

2. Declare that BlueChip has breached the License Agreement and the Support Agreement;

3. Award HCA-IT&S its damages, including treble damages, interest, costs, and attorney's fees; and

4. Award HCA-IT&S such other relief as this Court deems just.

Respectfully submitted,

HCA-INFORMATION TECHNOLOGY
& SERVICES, INC.,
By its attorneys,

J. William Codinha, BBO No. 087740
Timothy W. Mungovan, BBO No. 600702
Deborah C. Burton, BBO No. 650737
Stephen M. LaRose, BBO No. 654507
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000

Dated: June 27, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Michael A.
Albert, Wolf, Greenfield & Sacks, PC, 600 Atlantic Ave., Boston, MA 02210, by hand on June
27, 2005.

Stephen M. LaRose