IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUECHIP TECHNOLOGIES LTD.,

    Plaintiff

v.

HCA INFORMATION TECHNOLOGY &
SERVICES, INC.,
    Defendant.

Civil Action No. 05-10784 JLT

### AFFIDAVIT OF WILLIAM E. FITZGERALD

I, William E. Fitzgerald, state as follows:

1. I am an adult resident of Tennessee and make this Affidavit based upon my own knowledge and my review of the business records of HCA-Information Technology & Services, Inc. ("HCA-IT&S").

2. I am an Assistant Vice President of Technology Services for HCA-IT&S. As part of my duties and responsibilities, I manage the team of HCA-IT&S personnel that is responsible for maintaining and ensuring the proper functioning of the computer systems residing within HCA-IT&S' eight regional data centers. My organization provides services related to engineering, certification, and technical support for the hardware and software located within the data centers, including the MedArchive software program ("MedArchive"), which I understand is in dispute in this case.

3. I have over 24 years of experience in the information technology industry and have been in my current employment for over 16 years. My information technology career specializations have been primarily focused in the areas of management, systems analysis and design, computer programming, and technical support.

4. HCA-IT&S is a wholly-owned indirect subsidiary of HCA Inc. ("HCA").

5. HCA is a holding company whose affiliates or subsidiaries own, manage, or operate hospitals and other healthcare facilities, such as freestanding surgery centers and diagnostic and imaging centers.

6. HCA-IT&S, as its name implies, provides information technology and services to the hospitals and healthcare facilities (collectively, the "Hospitals"). Most of the Hospitals are owned and/or operated by HCA affiliates, while some are not.

7. Among other things, HCA-IT&S provides a service to the Hospitals that enables physicians and other healthcare providers to electronically retrieve patient medical information. The software program that controls most of this electronic medical record-keeping function is known as the MEDITECH Clinical Patient Care System (the "MEDITECH System"). The MEDITECH System is owned by Medical Information Technology, Inc. (commonly known as MediTech). Once patient medical information reaches a certain "age" in the MEDITECH System, it is electronically archived. While the "age" at which medical information is archived can vary, it is commonly archived on a rolling basis as early as forty-five (45) days from the patient's discharge date (for inpatient services) or service date (for outpatient services).

8. The MEDITECH System is the computer system(s) that provides clinical services to healthcare providers in the Hospitals.

9. MedArchive permits, electronically, both the retrieval and long-term storage of archived patient medical information at the request of the MEDITECH System. BlueChip Technologies, Ltd ("BlueChip") is the current owner of MedArchive. MedArchive operates on servers owned and operated by HCA-IT&S. These servers are housed in eight data centers.

10. The MEDITECH System will occasionally call upon MedArchive to perform medical information retrieval and storage operations (as background activity) for aged data as needed. This machine-to-machine interaction between the MEDITECH System and MedArchive is the only means of standard access to data stored and archived on the MedArchive servers. No user interfaces exist that enable the clinicians or healthcare providers at the Hospitals to access MedArchive directly. It is done exclusively through machine-to-machine communication, with no user knowledge as to the techniques employed by MedArchive.

11. Put another way, the healthcare provider is not aware of the interaction between the MEDITECH System and MedArchive. Moreover, the healthcare provider does not actually "use" MedArchive or interface directly with it. Thus, when a physician or healthcare provider using the MEDITECH System at one of the Hospitals needs to review a patient's electronic medical information, the MEDITECH System determines the location of the required information (either on the live MEDITECH System or on the back-end MedArchive server). If any of the needed information is archived on a MedArchive server, then the MEDITECH System makes a computer-to-computer request to MedArchive running on a physically separate external MedArchive server to return the medical information back to the MEDITECH System. Once the medical information is returned to the MEDITECH System, it is presented back to the healthcare provider in the MEDITECH System environment. Likewise, if the MEDITECH System determines that medical information is eligible for archiving based upon the aging criteria, an automated request to store patient medical information is sent by the MEDITECH System to the appropriate MedArchive server. Access to MedArchive and the medical information stored on the MedArchive servers is via the computer-to-computer interaction between the MedArchive servers and the servers operating the MEDITECH System. Healthcare providers have no access

whatsoever to the MedArchive software code (whether object code or source code) and such code is not made available to any healthcare providers. Healthcare providers also have no <u>direct</u> access to MedArchive, its functionality, or the data stored on the MedArchive servers.

12. Exhibit A to the License Agreement is entitled "List of Designated Equipment" and is further described as "HCA MedArchive Systems by Regional Data Centers and CPCS Networks." (As set forth above in paragraph 7, "CPCS" stands for Clinical Patient Care System - which is the MEDITECH System). Each of these MEDITECH System Networks reflected on Exhibit A is serviced by a corresponding MedArchive server. This relationship between the MEDITECH System Network and MedArchive permits the flow of data between the Network and the MedArchive servers listed in Exhibit A. Based on the definition of "Network" in the License Agreement, and the corresponding information set forth on Exhibit A to the License Agreement, HCA-IT&S understood and believed at all times that as long as the archived medical information that was stored on the MedArchive servers was available only to the MEDITECH System Networks, then HCA-IT&S was in compliance with the License Agreement, regardless of whether the MEDITECH System Network serviced Divested Facilities (as defined below in paragraph 17). Indeed, in January 2002, when BlueChip executed the License Agreement, some of the MEDITECH System Networks listed on Exhibit A were exclusively servicing Divested Facilities.

13. In the mid-1990's, Columbia/HCA Information Services (n/k/a HCA-IT&S) had an agreement with Data General Corporation ("Data General"), who at the time was the owner of MedArchive, pursuant to which Columbia/HCA Information Services could operate MedArchive on servers in its eight data centers and Data General would provide support for MedArchive (the "Data General Agreement").

4

14.     In 1999, Data General was aware that HCA was planning to divest itself of certain hospital facilities and that HCA-IT&S would continue to provide services, including information technology services such as electronic record keeping of patient medical information, to certain of these divested hospital facilities on an ongoing basis.

15.     In May 1999, HCA completed the divestiture of the hospitals in two of its divisions. As a result, LifePoint Hospitals, Inc. ("LifePoint") and Triad Hospitals, Inc. ("Triad") were created through a distribution of common stock to HCA's shareholders.

16.     From the time of their divestiture from HCA, HCA-IT&S has contracted to provide information technology and services to LifePoint and Triad, including the storage and retrieval of electronic archived patient medical information.

17.     In addition to LifePoint and Triad, HCA has divested itself of other Hospitals. In some instances, HCA-IT&S has continued to provide information technology and services to these divested Hospitals pursuant to Transitional Services Agreements. (The divested Hospitals to which HCA-IT&S has continued to provide services are the "Divested Facilities").

18.     In December 2000 or January 2001, BlueChip purchased MedArchive from EMC Corporation ("EMC"), which had recently purchased the assets of Data General.

19.     In February 2001, HCA-IT&S provided EMC and BlueChip with a list of the seventy-six (76) servers that were running MedArchive, including market name and server model information, and explained that HCA-IT&S did not know how many Hospitals were archiving per market or per MedArchive server.

20.     In January 2002, HCA-IT&S and BlueChip entered into a Software License Agreement in connection with HCA-IT&S' use of MedArchive (the "License Agreement").

21. The License Agreement authorizes HCA-IT&S to run MedArchive on the same servers that were covered under the Data General Agreement. The servers are listed as "Designated Equipment" in Exhibit A to the License Agreement, which identifies the servers by, among other things, the "market network," "time zone," and "serial number." There are a total of seventy-six (76) servers listed as Designated Equipment in Exhibit A to the License Agreement.

22. The servers through which HCA-IT&S provides data processing to the Divested Facilities are specifically listed as Designated Equipment in Exhibit A to the License Agreement.

23. Also in January 2002, HCA-IT&S and BlueChip entered into a Master Software Support Agreement in connection with BlueChip's maintenance and support of certain licensed software programs, including MedArchive (the "Support Agreement").

24. The Support Agreement concerns BlueChip's obligations to provide support to HCA-IT&S in connection with the Licensed Software. Exhibit C to the License Agreement is entitled "Supported Programs" and identifies programs for which BlueChip agreed to provide support (the "Supported Programs") and the cost of support for the Supported Programs. Exhibit C also identifies the quantity (as stated in the agreement: "QTY") of each of the Supported Programs and the "Unit Charge" for each Supported Program.

25. Since January 2002, HCA-IT&S has never operated MedArchive on more than the seventy-six (76) servers listed as Designated Equipment in Exhibit A to the License Agreement. Currently, HCA-IT&S operates MedArchive on seventy-three (73) of those servers, and a seventy-fourth server operates BlueChip's next generation archive software solution, which is a collection of Windows-based programs including the programs that are marketed as

Object Archive and Medscan 2000 (Object Archive and Medscan 2000 are, together, "Object Archive").

26. Of those seventy-three (73) servers that run the MedArchive software, seventeen (17) are Motorola 88K servers and fifty-six (56) are Intel servers. For the purposes of BlueChip providing support to HCA-IT&S for MedArchive, and the cost, expense, or difficulty to BlueChip in providing that support, there is no material difference between the incident rates (and need for support) for the Motorola 88K servers and the Intel servers based on records available through the BlueChip customer support website for HCA-IT&S incidents. If anything, the incident rate for the Motorola 88K servers is lower than the incident rate for the Intel servers.

27. In May and June 2003, the archive solution for HCA-IT&S' Jacksonville, Florida market was migrated to a new server and the software was converted to Object Archive (the "Jacksonville Server").

28. Since May 2003, BlueChip has been providing support for Object Archive pursuant to the Support Agreement and HCA-IT&S has been paying for such support.

29. Since the Support Agreement was entered into in January 2002, HCA-IT&S has formally requested support from BlueChip on approximately ninety-three (93) occasions. Of those ninety-three (93) requests for support, seventy-nine (79) related to support for Object Archive and related system functions.

30. Since January 1, 2004, HCA-IT&S has made one (1) request for support in connection with MedArchive: on September 13, 2004.

31. HCA-IT&S' support requirements for MedArchive and Object Archive include the development of code fixes for program malfunctions, data restoration and file recovery, and programming changes to correct software malfunctions.

32. The seventy-three (73) MedArchive servers and the Jacksonville server currently contain archived medical information for many thousands of patients.

33. If BlueChip terminates support for MedArchive and Object Archive on or after July 5, 2005, the functionality of these programs is likely to erode. HCA-IT&S does not have the capability to support either MedArchive or Object Archive without BlueChip's assistance. BlueChip has historical knowledge of both MedArchive and Object Archive, as well as unique knowledge of the programs' internal structure and operation. BlueChip also has exclusive access to the source code for all of the products (including both MedArchive and Object Archive) used by HCA-IT&S which are referenced in "Exhibit B – List of Designated Software." This access to the source code is crucial for support. These circumstances make it impractical for HCA-IT&S to effectively support either MedArchive or Object Archive without BlueChip's assistance. With regard to Object Archive, in particular, HCA-IT&S has experienced significant difficulty with this program and has had to rely heavily on support from BlueChip (as is clear from paragraph 29, above). To my knowledge, there are no third-party organizations that provide support which HCA-IT&S could use to replace BlueChip's support function.

34. If BlueChip's support is terminated, there is a substantial risk that the Hospitals served by HCA-IT&S will be unable to electronically retrieve the archived patient medical information, which includes historical physician's orders, visit summaries, and nursing notes.

35. Moreover, even if the MedArchive and Object Archive programs were to remain functional without BlueChip's support, HCA-IT&S and the Hospitals could not continue to rely on the electronic availability of the medical information stored on the MedArchive and Object Archive servers because the functionality of these programs is at risk without BlueChip's support. If BlueChip's support for the MedArchive and Object Archive servers is terminated

8

without sufficient notice to HCA-IT&S to secure a replacement software solution, HCA-IT&S may have to notify the Hospitals that the Hospitals could not rely on the electronic availability of medical information (stored on the MedArchive and Object Archive servers).

36. Moreover, if BlueChip terminates its support for MedArchive and Object Archive, HCA-IT&S will need six (6) months to transition from MedArchive to another archive software platform, and at least eighteen (18) months to transition from Object Archive to another software platform. For example, in October 2004, BlueChip presented HCA-IT&S with a high-level project plan to convert all of HCA-IT&S' servers within the eight regional data centers to BlueChip's new Object Archive solution. BlueChip's proposed conversion plan spanned more than seventeen (17) months to complete the conversion for the proposed seventy-three (73) active MedArchive servers. Additionally, for the single MedArchive server that was converted to Object Archive, it took 364 calendar days to complete according to BlueChip's documentation that was presented to HCA-IT&S.

Signed under the pains and penalties of perjury of this 24 day of June 2005.

_William E. Fitzgerald_
William E. Fitzgerald

## CERTIFICATE OF SERVICE

I, Stephen LaRose, hereby certify that on June 27, 2005, I caused a true and accurate copy of the above affidavit to be served upon counsel for Plaintiff by hand.

_____